# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CRIMINAL MINUTES - GENERAL

| | |
|---|---|
| Case No.  CR 16-200-GW | Date  January 25, 2018 |

Present: The Honorable  GEORGE H. WU, UNITED STATES DISTRICT JUDGE

Interpreter  NONE

| Javier Gonzalez | Katie Thibodeaux | Thomas F. Rybarczyk |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| 2. Enrique Hernandez Miranda | ✔ | ✔ | | Pedro V. Castillo, DFPD | ✔ | ✔ | |

**DEFENDANT'S MOTION TO DISMISS INDICTMENT AND/OR EXCLUDE EVIDENCE [45];**

**DEFENDANT'S MOTION TO SUPPRESS [49];**

PROCEEDINGS:    PRETRIAL CONFERENCE

Court confers with counsel. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. The Court would deny the Motion to Dismiss Indictment in its entirety. The Court would deny the Motion to Suppress in as much as it seeks to suppress evidence gathered from Defendant's cell phone but would grant it in as much as it seeks to suppress Defendant's statements to officers after he was detained.

Jury Trial is continued to June 19, 2018 at 8:30 a.m.; Pretrial Conference is continued to June 7, 2018 at 8:00 a.m.

The Defendant and his counsel orally waive their speedy trial rights on the record. Parties will file a stipulation and order regarding Speedy Trial Act forthwith.

|  |  : | 04 |
|---|---|---|
| Initials of Deputy Clerk | JG | |

*__United States v. Enrique Hernandez-Miranda__*; Case No. 2:16-cr-00200-GW-2
Tentative Rulings on: (1) Motion to Dismiss Indictment and/or Suppress Evidence, and (2) Motion to Suppress Evidence

## I.  Background

Defendant Enrique Hernandez-Miranda[1] is charged with 1) one count of conspiring to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(ii); and 2) one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. 841(a)(1), (b)(1)(A)(ii).  *See generally* Indictment, Docket No. 12.  Defendant brings two pretrial motions challenging this prosecution and the evidence used to support it.  First, Defendant argues that the indictment must be dismissed or the cocaine suppressed because members of Ecuadorian law enforcement acted as agents of the United States Government and violated Defendant's fourth amendment rights in seizing cocaine during the course of a joint investigation with the Drug Enforcement Agency ("DEA").  *See generally* Motion to Dismiss Indictment and/or Exclude Evidence ("MTD"), Docket No. 45.  Additionally, Defendant seeks to suppress evidence discovered from a search of his cell phone, arguing that his arrest was unconstitutional and thus any evidence seized or discovered as a direct result must be suppressed.  *See generally* Motion to Suppress Evidence ("MTS"), Docket No. 49.

DEA Agents in the Los Angeles Field Division investigated a drug trafficking organization based in Mexico that supplied marijuana and cocaine to the Los Angeles area.  *See* DEA Report of Investigation, Docket No. 46-1 at 4 of 44.[2]  Through the course of their investigation, the agents identified an individual named "Pariente," later discovered to be Defendant's alleged co-conspirator, Hugo Alberto Ramirez-Ortiz, as part of the organization.  *See id.* at 5 of 44.  The agents learned that Ecuadorian law enforcement agencies were also actively investigating Ramirez-Ortiz and his brother, Luis Ramirez-Ortiz.  *See id.*  By early 2015, DEA agents in Quito,

---

[1] The record before the Court identifies the Defendant using the last names "Hernandez," "Miranda," and "Hernandez-Miranda."

[2] Information regarding the background of this investigation is gleaned from unsworn DEA reports provided by both Defendant in support of the motions and the Government in opposition – these facts are not in dispute.  The facts surrounding Defendant's arrest, the seizure of his cellphone, and subsequent questioning are in dispute and the Court's recitation of those events is informed by sworn affidavits and declarations submitted by the parties.

Ecuador began sharing investigative information about Ramirez-Ortiz with those Ecuadorian law enforcement agencies. *See id.* The Ecuador-based DEA agents and Ecuadorian law enforcement agents thereafter met in Ecuador with a DEA confidential source ("CS1") who provided information on Ramirez-Ortiz and his alleged operations. *Id.* In November 2015, CS1 reported that Ramirez-Ortiz was interested in establishing a direct supply from Ecuador to the United States. *See id.* at 11 of 44. Specifically, CS1 reported that Ramirez-Ortiz wanted CS1 to deliver approximately 20 kilograms of cocaine to Los Angeles. *See id.* At the direction of Ecuadorian law enforcement and DEA agents, CS1 told Ramirez-Ortiz that CS1 could export large quantities of cocaine into the United States but would need time. *See id.* at 14 of 44. CS1 reported that in response Ramirez-Ortiz said he had a customer base in Los Angeles and looked forward to opening a new export route into the United States. *Id.*

On February 23, 2016, Ramirez-Ortiz directed an associate of his to deliver 20 kilograms of cocaine to an associate of CS1. *See id.* at 22 of 44. After taking delivery, CS1's associate surrendered the cocaine to Ecuadorian law enforcement agents. *See id.* Neither the associate of CS1 nor the associate of Ramirez-Ortiz was arrested. *Id.* at 23 of 44. On February 28, 2016, the cocaine was transported from Ecuador to Los Angeles by Ecuadorian law enforcement agents and turned over to a Los Angeles-based DEA agent. *Id.* at 27 of 44. DEA agents then used a second confidential source ("CS2") to deliver the cocaine to Ramirez-Ortiz's organization. *See id.* at 31 of 44.

CS2 arranged to deliver the cocaine to the parking lot of a Double Tree Hotel in Commerce, California. *See* Declaration of Glendale Police Officer Christopher Marshall, Docket No. 54-2, ¶¶ 8-11. Agents searched CS2 and the car he would use for the delivery prior to providing him with six kilograms of cocaine and 14 kilograms of sham cocaine. *Id.* ¶ 12. DEA agents surveilling the location observed CS2 arrive at approximately 10:55 a.m. *Id.* ¶ 13. At approximately 11:15 a.m., the agents observed a maroon Scion arrive at the hotel, park, and two men, one of whom was later identified as Defendant, exit the vehicle. *Id.* ¶ 15. Defendant was observed using a cellphone as he approached CS2 and the two shook hands. *Id.* CS2 and Defendant walked to CS2's car while the man who accompanied Defendant returned to the Scion and drove it to the two other men, parking the Scion in an adjacent spot. *Id.* CS2 retrieved a suitcase containing the cocaine and the sham cocaine and Defendant opened the trunk of the Scion. *Id.* CS2 placed the suitcase in the trunk of the Scion and Defendant then entered the passenger seat of the Scion. *Id.*

At that point agents detained Defendant. *See id.* ¶ 17.  Specifically, agents approached with weapons drawn and pointed at the Scion and identified themselves as "police."  *See id.* Defendant was handcuffed and patted down for weapons. *See id.*; *see also* Declaration of DEA Agent Tommy Fung, Docket No. 54-1, ¶ 5.  While he was handcuffed, agents questioned Defendant in English.  Fung Decl. ¶ 6.  Defendant was not advised of his *Miranda* rights prior to questioning.  *See* MTS, Exhibit E (Affidavit in Support of Search and Seizure Warrant), Docket No. 49-2 at 25 of 36 (n.2).  In response to the agents' questions, Defendant stated that he was at the parking lot to pick something up.  Fung Decl. ¶ 6.  Defendant stated that he was waiting for further instructions that would come by phone call or text message.  *Id.*  Agent Fung declares that at that point Defendant was asked and agreed to allow agents to search of his cell phone.  *Id.* Defendant declares that he was not asked for consent and did not provide it.  *See* Declaration of Defendant, Docket No. 49-1.

Defendant signed a DEA Form 88 – Consent to Search.  *See* Docket No. 54-3 at 5 of 5. The form states that Defendant was asked to permit DEA agents to search a "Kyocera cell phone, seized pursuant to arrest on 03-02-2016" and that he "freely consent[ed]" to the search.  *Id.*  It states that Defendant had not been threatened, nor forced in any way. *Id.*  The form was witnessed by Special Agents Robert Thomas and Peter Johnson.  *Id.*  Defendant declares that he did not sign the consent form the day of his arrest as the Government claims but did so the following day.  *See* Defendant Decl. ¶ 4.  Additionally, Defendant declares that the form was blank when he signed it and that the agents did not explain that the form was used to document consent to search his cellphone.  *See id.*

Approximately eighteen months after his arrest, on October 5, 2017, the Government obtained a warrant from Magistrate Judge McDermott to search Defendant's cellphone.  *See* MTS, Exhibit E, Docket No. 49-2 at 14-36 of 36.  The warrant was supported by the affidavit of DEA Agent Jason Ward.  *Id.* at 23-36 of 36.  In a section titled summary of probable cause, SA Ward states:

> On March 2, 2016, as part of an international DEA drug trafficking investigation, a DEA confidential source ("CS2") delivered 6 kilograms of cocaine and 14 kilograms of fake cocaine to Enrique Hernandez Miranda ("Hernandez") in a Commerce, California hotel parking lot.  Before Hernandez took possession of the real and fake cocaine, Hernandez could be seen speaking into the Subject Device [*i.e.*, the cellphone] and saying that "[CS2]'s right here, [CS2]'s

3

> good." Hernandez then proceeded to take possession of the real and fake cocaine in his vehicle before DEA agents arrested him. At the time of his arrest on March 2, 2016, defendant had the Subject Device in his possession and consented to its search verbally and later in writing. Hernandez has been in custody since his arrest, and there is no record of him requesting return of the subject device. Subsequently, on March 29, 2016, Hernandez along with co-defendant, Hugo Alberto Ramirez-Ortiz and Andrew Alex Aguirre, were charged in an indictment with violating 21 U.S.C. § 846, conspiracy to distribute and possess with intent to distribute cocaine, and 21 U.S.C. § 841(a)(1), (b)(1)(A)(ii), possession with intent to distribute cocaine.

*Id.*, Docket No. 49-2 at 24-25 of 36. In a footnote, SA Ward noted that "Agents have searched the Subject Device based on Hernandez's consent, which was later memorialized in writing. Prior to obtaining Hernandez's consent to search the subject device, agents did not provide Hernandez his *Miranda* warnings. Out of an abundance of caution, the government is not relying on any information provided by Hernandez to DEA agents after the agents confronted Hernandez on March 2, 2016. Specifically, the government is not relying on the agents' review of text messages with Hernandez and their subsequent search of the Subject Device." *Id.* at 49-2 at 25 of 36 (n.2).

## II. Legal Standards

### A. Motion to Dismiss Indictment for Lack of Subject Matter Jurisdiction

Federal Rule of Criminal Procedure ("Rule") 12(b) permits a defendant to bring "[a] motion that the court lacks jurisdiction" at any time while a case is pending. 18 U.S.C. § 3231 provides that United States district courts have original jurisdiction "of all offenses against the laws of the United States." In *Ford v. United States*, the Supreme Court considered a jurisdictional challenge brought on behalf of defendants convicted of conspiracy to import contraband. 273 U.S. 593, 601 (1927) (among other questions, the Court examined whether "persons without the United States conspiring and co-operating to violate its laws with other persons who are within the United States, and to commit overt acts therein, can be prosecuted therefor when thereafter found in the United States"). The Court concluded that "[i]n such a case all are guilty of the offense of conspiring to violate the United States law whether they are in or out of the country." *Id.* at 620.

"An indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charges on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956). Accordingly, the Rules do not provide a mechanism by which defendants "may

4

challenge indictments on the ground that they are not supported by adequate or competent evidence." *Id.* at 364.

    B.  Motion to Suppress Evidence

"The Fourth Amendment provides in relevant part that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.'" *United States v. Jones*, 565 U.S. 400, 404 (2012). "[S]earches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993).

A defendant subjected to a warrantless search and seizure that does not fall within any exception to the warrant requirement may move to suppress that unlawfully obtained evidence at trial. Rule 41(h); *see also Weeks v. United States*, 232 U.S. 383 (1914); *Mapp v. Ohio*, 367 U.S. 643 (1961). This "exclusionary prohibition" also extends "to the indirect . . . products of such invasions." *Wong Sun v. United States*, 371 U.S. 471, 484 (1963); *accord Segura v. United States*, 468 U.S. 769, 804 (1984). Upon a defendant's motion, the Government bears the burden of showing that a warrantless search falls within one of the delineated exceptions to the warrant requirement. *United States v. Huguez-Ibarra*, 954 F.2d 546, 551 (9th Cir. 1992). The Government must meet that burden with "proof by a preponderance of the evidence." *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

However, "a person seeking to exclude evidence allegedly obtained in violation of the fourth amendment must have standing to challenge the illegal conduct that led to the discovery of the evidence." *United States v. Pulliam*, 405 F.3d 782, 786 (9th Cir. 2005). To establish standing "the defendant must establish that he or she had a 'legitimate expectation of privacy' in the place searched or in the property seized." *United States v. Kovac*, 795 F.2d 1509, 1510 (9th Cir. 1986), quoting *Rakas v. Illinois*, 439 U.S. 128, 143-44 (1978). The "legitimate expectation of privacy" requirement means a defendant seeking to suppress evidence must show: (1) that he or she "exhibited an actual, subjective expectation of privacy, and, more importantly"; (2) that the defendant's subjective expectation of privacy was "one that society is prepared to accept as reasonable and therefore, legitimate." *United States v. Kovac*, 795 F.2d at 1510, citing *Smith v. Maryland*, 442 U.S. 735, 740 (1979). Put simply, a "person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third

5

person's premises or property has not had any of his Fourth Amendment rights infringed." *Pulliam*, 405 F.3d at 785-86, quoting *Rakas*, 439 U.S. at 134.  For example, "a passenger with no possessory interest in the car" generally "has no reasonable expectation of privacy in [the] car that would permit [his] Fourth Amendment challenge to a search of the car."  *Id.* at 786.

### III.  Discussion

#### A.  Motion to Dismiss Indictment for Lack of Subject Matter Jurisdiction

In a six-page Motion to Dismiss, Defendant clearly seeks for the indictment to be dismissed.  *See* MTD at 2 ("The instant motion seeks dismissal of the indictment because the government cannot establish federal subject matter jurisdiction as a matter of law.").  However, the basis of the Government's purported inability to establish jurisdiction, and thus for dismissal, is far from clear.[3]  Defendant asserts that the DEA conducted "a joint investigation" with Ecuadorian law enforcement agencies and therefore "the exclusionary rule is implicated, the drugs must be excluded."  *Id.* at 4.  Defendant never states explicitly on what basis he believes the exclusionary rule – which suppresses evidence that the Government may use at trial – would result in the dismissal of an indictment, however.  The Government would appear to be as perplexed as the Court as in opposition, it states that "[c]hallenges to jurisdiction based on extraterritorial application of the criminal laws (which, although defendant does not articulate, appears to be the only conceivable basis to dismiss the indictment for lack of jurisdiction) involve situations where the government is enforcing its laws beyond the territorial boundaries of the United States."  Opposition to MTD ("MTD Opp'n"), Docket No. 46, at 7 (internal quotation marks and citations omitted).  Defendant does not clarify his position regarding dismissal in his response to the Government's opposition, as his Reply does not mention the indictment, instead arguing in three paragraphs that "the Exclusionary Rule precludes the use of the drugs," that Defendant "has standing to challenge the legality of the seizure of the drugs and can raise a constitutional claim" and that, if the Government doesn't show that it complied with Ecuadorian law, "the Exclusionary Rule precludes the use of those drugs against" Defendant.  *See* Reply in Support of MTD ("MTD Reply"), Docket No. 50, at 1-2.

As a general matter the Court has jurisdiction "of all offenses against the laws of the United

---

[3] The Government asserts that the MTD should be denied because the Defendant has failed to comply with Rule 47: "[a] motion must state the grounds on which it is based and the relief or order sought."  The Court agrees that Defendant has failed to articulate grounds on which the indictment might possibly be dismissed but will nonetheless consider the issue despite Defendant's failure to comply with the Rule.

States." 18 U.S.C. § 3231.  Here, Defendant has been charged with two counts in violation of the United States Code, thus plainly coming within the ambit of 18 U.S.C. § 3231.  To the extent that Defendant asserts that the Court lacks jurisdiction because the alleged conspiracy spanned national borders, the Supreme Court has concluded that "[i]n such a case all are guilty of the offense of conspiring to violate the United States law whether they are in or out of the country."  *Ford*, 273 U.S. at 620.  Furthermore and unlike the appellants in *Ford*, Defendant's alleged actions in furtherance of the conspiracy occurred *within the borders of the United States*.  The Court would thus see no conceivable reason whatsoever to find that it lacks jurisdiction over a criminal trial holding Defendant to answer for allegedly possessing cocaine in Commerce, California, in furtherance of a conspiracy to traffic narcotics.  To the extent that Defendant asserts that the Government would lack adequate or competent evidence to maintain the prosecution in the event the Court were to suppress the cocaine, he may not challenge an indictment on that basis.  *See Costello*, 350 U.S. at 364.  In sum, the Court would find that it has sufficient jurisdiction over this prosecution and Defendant's Motion to Dismiss is denied in as much as it seeks dismissal of the indictment.

     B.  Motion to Suppress the Cocaine

     As noted above, Defendant asserts that the "the exclusionary rule is implicated" and thus "the drugs must be excluded" because the DEA ran a "joint investigation" with Ecuadorian law enforcement.  MTD at 4.  As a preliminary matter, suppression of evidence does not automatically follow in any instance in which the exclusionary rule is "implicated."  To the contrary, [s]uppression of evidence . . . has always been our last resort, not our first impulse."  *Hudson v. Michigan*, 547 U.S. 586, 591 (2006).  Setting aside that doctrinal matter, the Court would find that Defendant has failed to articulate any basis on which the Court could – let alone should – suppress the cocaine.

     "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted."  *Brown v. United States*, 411 U.S. 223, 230 (1973).  As such, "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed."  *Rakas*, 439 U.S. at 128.  "Thus, a person seeking to exclude evidence allegedly obtained in violation of the fourth amendment must have standing to challenge the illegal conduct that led to the discovery of the evidence.  '[T]o say that a party lacks

fourth amendment standing is to say that his reasonable expectation of privacy has not been infringed. It is with this understanding that we use 'standing' as a shorthand term.'" *Pulliam*, 405 F.3d at 786 (quoting *United States v. Taketa*, 923 F.2d 665, 669-70 (9th Cir. 1991)).

In opposition to Defendant's assertion that the cocaine ought to be suppressed, the Government argues that even assuming that the fourth amendment *is* implicated and that the DEA and/or Ecuadorian law enforcement agencies violated it in accepting the cocaine from CS1 in Ecuador,[4] Defendant nonetheless would lack standing to assert those violations. *See* MTD Opp'n at 10-11. In response, Defendant asserts that he does have standing:

> Mr. Hernandez Miranda is charged with conspiracy to distribute and possess with intent to distribute cocaine. The cocaine with which he is charged was seized in Ecuador by DEA agents working alongside Ecuadoran law enforcement. The Government asserts that it did not arrest either the unindicted co-conspirator who delivered the drugs in Ecuador, and who was working with the target of the investigation, Hugo Alberto Ramirez Ortiz, or the individual associated with CS1 who picked up the drugs, so as to "maintain the integrity of the investigation." Yet, Mr. Hernandez-Miranda, who is the person charged with picking up the drugs in Los Angeles, is the sole individual before the Court at this time. Because he is charged with the drugs, Mr. Hernandez-Miranda has standing to challenge the legality of the seizure of the drugs and can raise a Constitutional claim.

MTD Reply at 1 (evidentiary citations omitted). Defendant may not show standing simply because "he is charged with the drugs." *Id.* The Supreme Court has explicitly held the opposite in finding that a person aggrieved by "the introduction of damaging evidence" does not have standing if only the rights of others were violated in securing the evidence. *See Rakas*, 439 U.S. at 230. Accordingly, the Court would find that Defendant has failed to show that the seizure of cocaine in Ecuador, later used in a surveilled transfer to Defendant in Commerce, California, implicates, let alone violates, *his* Fourth Amendment rights. Defendant has asserted no basis upon which he could assert an interest or expectation of privacy in the seizure of cocaine possessed by another person in a different country. It is his burden to demonstrate standing and Defendant has failed to

---

[4] The Court does not find that Defendant's MTD adequately shows that either of these conditions have been met as Defendant has merely asserted in conclusory fashion that Ecuadorian law enforcement and/or the DEA violated his fourth amendment rights in voluntarily receiving contraband from CS1 as part of their investigation. Because the Court finds that Defendant lacks standing to even raise those meritless arguments, the Court will not belabor the point by setting forth a fuller analysis of those issues.

8

do so.  *See Pulliam*, 405 F.3d at 786.

    C.  Defendant's Arrest

    Defendant also argues that:

> The government cannot establish that the officers had probable cause to believe Mr. Hernandez Miranda violated the law.  There is no evidence that Mr. Hernandez Miranda brokered the cocaine deal, was the source of the cocaine, or was otherwise involved in the delivery of the drugs before they arrived in Los Angeles.  Indeed, this was a "sting" operation with the eventual goal of arresting Hugo Alberto Ramirez Ortiz.  For these reasons, Mr. Hernandez Miranda requests that the Government justify his arrest.

MTS at 5.  Probable cause exists when law enforcement agents possess "reasonably trustworthy information" that would make "a prudent person" believe "that the suspect had committed or was committing an offense."  *United States v. Pinion*, 800 F.2d 976, 979 (9th Cir. 1986).  In evaluating probable cause, courts look to the totality of the circumstances known to the law enforcement agents in determining whether probable cause exists for the arrest.  *United States v. Butler*, 74 F.3d 916, 920 (9th Cir. 1996).  Here, DEA agents surveilling a controlled delivery observed Defendant and another man arrive at a pre-determined drug delivery location.  The agents observed Defendant walk up to CS2, shake hands, and follow CS2 to his car.  After the other car parked next to where Defendant and CS2 stood, Defendant opened the trunk and accepted delivery of a suitcase containing 6 kilograms of cocaine and another 14 kilograms of sham cocaine.  Defendant then entered the passenger seat of that car and, before it drove away, was detained by DEA agents.  Considering the totality of the circumstances, most notably the reasonably trustworthy information gleaned the agent's own observations, a prudent person would certainly have believed that Defendant was committing the offense of possession of cocaine.  *See Pinion*, 800 F.2d at 979.  Defendant's arguments to the contrary are unavailing.  Defendant states that the purpose of the controlled delivery was to further an investigation into another man, Hugo Ramirez Ortiz, and that the agents did not possess "evidence that Mr. Hernandez Miranda brokered the cocaine deal, was the source of the cocaine, or was otherwise involved in the delivery of the drugs *before* they arrived in Los Angeles."  MTS at 5 (emphasis added).  True enough and moreover the agents also did not have evidence that the Defendant had personally cultivated the coca plants that where later harvested and processed to manufacture the six kilograms of cocaine that agents observed Defendant accept by transfer to the trunk of the car.  But the law requires only that the agents have probable cause to believe that Defendant illegally possessed cocaine, not that he was the

9

mastermind of an international drug trafficking organization. *See United States v. Garza*, 980 F.2d 546, 550 (9th Cir. 1992) (Probable cause to arrest existed where DEA agents observed a defendant drive to the location of a planned drug buy and let off a passenger who personally delivered cocaine to a DEA agent, the defendant did not drive away until the passenger showed the cocaine to the agent, and agents trailed the defendant for a short distance before arresting him. "These facts, when combined with the arresting agents' knowledge that drug dealers are unlikely to use innocent drivers in a multi-kilogram cocaine delivery, amply support the district court's finding of probable cause underlying [the] arrest.").

Finally, the Court notes that in his Motion to Suppress Defendant "request[ed] that the Government justify his arrest." MTS at 5. After the Government set forth the facts justifying his arrest in its opposition to his Motion to Suppress, the Defendant states only in reply that "[a]s argued in his motion to suppress evidence, when law enforcement officers detained Mr. Hernandez Miranda on March 2, 2016, they lacked reasonable suspicion to stop and detain him, and further lack [sic] probable cause to arrest him." Reply to MTS ("MTS Reply"), Docket No. 55, at 1. Other than this conclusory statement, Defendant cites no authority and offers no argument for why the Government's justification of the arrest should not be accepted by the Court. The Court finds that the Government has met its burden to justify Defendant's warrantless arrest on March 2, 2016. Accordingly, in as much as the Motion to Suppress asserts that evidence seized as a result of Defendant's arrest should be suppressed as fruit of the poisonous tree, Defendants Motion to Suppress is denied.

D. Seizure of the Cell Phone

As explained above, the DEA agents had probable cause to arrest Defendant.

> The Supreme Court and our court have already held that a search incident to a lawful arrest is not limited to simple pat-down of the suspect and can "involve a relatively extensive exploration" of the areas within the arrestee's immediate control. *United States v. Robinson*, 414 U.S. 218, 227, 94 S. Ct. 467, 38 L.Ed.2d 427 (1973) (internal quotation marks omitted); s*ee also United States v. Maddox*, 614 F.3d 1046, 1048 (9th Cir. 2010). Those areas include the arrestee's person and the inside pockets of the arrestee's clothing. *See Robinson*, 414 U.S. at 224-25, 94 S. Ct. 467.

*United States v. Williams*, 846 F.3d 303, 312 (9th Cir. 2016). The Government argues that Defendant's cellphone was lawfully seized incident to his arrest. *See* Opposition to MTS ("MTS Opp'n") at 12-13. The Government states that because the DEA agents observed Defendant use

10

his cellphone during the course of the controlled delivery, the cellphone was evidence of drug trafficking. *See id.* at 12. In support of this argument, the Government directs the Court to *United States v. Vega-Cervantes*, No. 1:14-CR-234-WSD, 2015 WL 4877657, at *13-15 (N.D. Ga. Aug. 13, 2015). There, the district court reviewed defendants' objections to a magistrate judge's report and recommendation and determined that the government had established by a preponderance of the evidence that the defendants' cell phones were lawfully seized during their arrests. *Id.* at *15. The Government argues that the court found "that seizure of cellphones believed to be used during a controlled delivery of methamphetamine were lawfully seized incident to arrest where officers observed defendants using their cellphones during the controlled delivery." The question faced by the court there, however, was not whether a cellphone could be lawfully seized incident to arrest if agents observed a defendant use the cellphone at or near the time of the alleged crime, but instead whether or not the agents actually seized the cellphones from the defendants' persons or instead from a car as the defendants asserted. *Id.* Nonetheless, the court there did implicitly find that a cellphone may be lawfully seized as part of a search incident to arrest where officers assert reason to believe it contains evidence of the crime for which a defendant is arrested. *See id.*

In the alternative, however, the Government argues that even if the initial seizure of the cellphone violated constitutional requirements, the cellphone inevitably would have been discovered and seized pursuant to the DEA's inventory practices. *See* MTS Opp'n at 13. Courts do not suppress evidence that would have been inevitably discovered, despite a violation of a defendant's fourth amendment rights. *See, e.g.*, *United States v. Ruckes*, 586 F.3d 713, 718 (9th Cir. 2009). "The purpose of the inevitable discovery rule is to block setting aside convictions that would have been obtained without police misconduct." *Nix v. Williams*, 467 U.S. 431, 443 (1984). Where the Government may establish by a preponderance of the evidence that the evidence "ultimately or inevitably would have been discovered by lawful means," a court will not suppress its use in the Government's case in chief. *Id.* Lawful means includes a "routine booking procedure and inventory" of an arrestee's belongings. *United States v. Andrade*, 784 F.2d 1431, 1433 (9th Cir. 1986). The Government argues that in accordance with established procedures, the DEA agents would have searched Defendant's person prior to transporting him to a detention facility for booking and thus would have discovered, inventoried, and seized Defendant's cellphone. *See* MTS Opp'n at 13; *see also* Marshall Decl. ¶ 18.

The Government has thus asserted two bases for the seizure of Defendant's cellphone - that

11

it was lawfully seized incident to his arrest and that in the alternative it would have been seized pursuant to an inventory.  In response, the Court notes that Defendant does not argue that *either* basis fails to justify the seizure or that the Court should otherwise find that the seizure was unlawful.  In fact, Defendant's Reply makes no mention whatsoever of the cellphone.  *But see* MTS at 6 ("To the extent that the government offers a justification [for the extended seizure] in its opposition to this motion, the defense will address the adequacy of that justification in its reply.").  The Court finds that the Government has met its burden of showing that the warrantless seizure of Defendant's cellphone was lawful.  First, the cellphone was lawfully seized by agents incident to Defendant's arrest as officers had probable cause to believe that it contained evidence of a crime by virtue of the fact that they witnessed Defendant use it during the course of the controlled delivery.  In the alternative, if it had not been seized at that time it would have been during an inventory prior to booking.[5]

     E.  Search of the Cellphone

The evidence before the Court indicates that Defendant's cellphone was searched multiple times.[6]  First, agents assert that they searched the cellphone based on Defendant's consent to search which admittedly was accomplished without Defendant receiving a *Miranda* advisal.  While the failure to give a *Miranda* advisal prior to seeking consent to search does not in and of itself render the consent invalid or involuntary, *see United States v. Alfonso*, 759 F.2d 728, 741 (9th Cir. 1985), Defendant contends that he simply never gave consent.  *See* Defendant's Decl. ¶ 4.  Moreover, he declares that the form later used to memorialize his consent was blank when he signed it and that the agents did not explain that the form was used to document his consent to search his cellphone. *See id.*  This clear evidentiary dispute might ordinarily require the Court to hear testimony and make findings of fact to resolve the issue.

---

[5] Defendant has been in custody since the time of his arrest and has not sought the return of his cellphone in that time.  *See* Docket No. 49-2 at 25 of 36.  The Court would not find that the Government's maintained possession of the cellphone is unreasonable in light of the Defendant's confinement and his failure to seek its return.  *See United States v. Johnson*, 875 F.3d 1265 (9th Cir. 2017) (one year delay in obtaining a warrant to search cell phone not unreasonable where the government seized the phone lawfully, defendant was in custody, and never sought return of the phone).

[6] Defendant does not explicitly assert that he has a reasonable expectation of privacy in his cellphone.  While it is his burden to demonstrate standing, the Court would find that the Defendant has significant privacy interests and thus a reasonable expectation of privacy in his cellphone, thus permitting him to challenge any search of it.  *Cf. Riley v. California*, 573 U.S. ___, 134 S. Ct. 2473 (2014).

However, the Court need not reach the issue of Defendant's consent because the Government subsequently obtained a search warrant. *See* Docket No. 49-2 at 14-36 of 36. Accordingly, evidence revealed during the course of the search executed in accordance with that warrant – whether or not duplicative of information gleaned from the consent searches – will only be suppressed if Defendant's fourth amendment rights were violated by the issuance of the search warrant. *See Segura*, 468 U.S. at 805 (evidence will not be excluded where the government learns of it independent from any alleged constitutional violation). Defendant offers two grounds to defeat the search warrant: 1) that the warrant was not supported by probable cause; and 2) relatedly, that the information was stale.[7]

In reviewing a magistrate's determination of probable cause, "the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983) (internal quotation marks and citation omitted). "In borderline cases, preference will be accorded to warrants and to the decision of the magistrate issuing it." *United States v. Crews*, 502 F.3d 1130, 1135 (9th Cir. 2007) (citing *United States v. Terry*, 911 F.2d 272, 275 (9th Cir. 1990)). "The Constitution is clear; a magistrate may authorize a search of a location only if officers establish probable cause to believe evidence of a crime may be found there. Probable cause means only a 'fair probability,' not certainty, and requires consideration of the totality of the circumstances." *United States v. Hill*, 459 F.3d 966, 970 (9th Cir. 2006) (quoting *Gates*, 462 U.S. at 213).

Here, the affidavit submitted in support of the warrant detailed a years-long investigation of Ramirez-Ortiz spanning Mexico, Ecuador, and the United States. *See* Docket No. 49-2 at 26-27 of 36. It detailed the facts and circumstances of Defendant's arrest following receipt of six kilograms of cocaine and 14 kilograms of sham cocaine. *Id.* at 28-30 of 36. Most notably, it notes that during the course of the delivery, CS2 heard Defendant say into the cellphone that "he's right here, he's good." *Id.* at 29 of 36. Based on SA Ward's training and experience, he concluded that Defendant used the cellphone "to coordinate with a co-conspirator to pick up the test shipment of

---

[7] Defendant additionally argues that the search warrant could not have issued had the Government not unlawfully seized the phone in the first place. *See* MTS at 8 ("Without the phone, a search warrant could not have been sought."). As discussed above, the Court would find that the Government lawfully seized the phone incident to Defendant's arrest, would have seized it during the course of an inventory in the alternative, and that maintaining possession of the phone while Defendant remained in custody and made no attempt to have the phone returned was reasonable. Accordingly, the Court would find that this argument – that the search warrant is defeated by an earlier, unlawful seizure – is without merit.

cocaine." *Id.* at 30 of 36.  SA Ward's affidavit then goes on to detail his training and experience in drug trafficking investigations, *id.* at 30-31 of 36, and his training and experience with digital devices, *id.* at 31-36 of 36.  Finally, the warrant explicitly states, and the Court's review confirms, that the affidavit does "not rely[] on any information provided by Hernandez to DEA agents after the agents confronted Hernandez on March 2, 2016.  Specifically, the government [does] not rely[] on the agents' review of text messages with Hernandez and their subsequent search of the Subject Device." *Id.* at 25 of 36 (n.2).[8]

Defendant's assertion that the information contained within the affidavit was stale (mentioned only in a heading but never explicitly argued) is without merit as the evidence shows that the cellphone was maintained by the Government from the time of Defendant's arrest until the time the search warrant was issued.  As such, the cellphone was in identical condition when the warrant was issued, despite the fact that over a year and a half passed in the interim.  The information used to support the warrant was not stale as there are no concerns of dissipation or changed circumstances.  Finally, the Court again notes that Defendant's Reply makes no mention whatsoever of the cellphone.  *But see* MTS at 6 ("To the extent that the government offers a justification [for the extended seizure] in its opposition to this motion, the defense will address the adequacy of that justification in its reply.").  In sum, based on the Court's review, and the deference afforded magistrates in the issuance of warrants, the Court would find that the search warrant was lawfully issued based on probable cause and would deny the Motion to Suppress.

F.  *Miranda* Issue

As the Court has now twice noted, Defendant's Reply – ostensibly in support of his motion to suppress the cellphone and derivative evidence – makes no mention of the cellphone.  Instead, for the first time, Defendant uses the Reply to argue that statements taken from him at the time of his arrest ought to be suppressed because they were taken in violation of his *Miranda*[9] rights.

> Here, there is no question that Mr. Hernandez Miranda was in custody when the officers approached him.  They drew their weapons, indicating that they were police.  There were several officers.  They yelled commands at Mr. Hernandez Miranda, to which he complied.  They handcuffed him.  They searched him.  They seized his cell phone.  Mr. Hernandez Miranda made incriminating statements.  Had Mr. Hernandez Miranda been

---

[8] As such, the Court finds unavailing Defendant's argument that the warrant is defective as "fruit of the poisonous tree" because the consent searches were unlawful.  *See* MTS at 8.

[9] *Miranda v. Arizona*, 384 U.S. 436 (1966).

> properly advised of his *Miranda* rights, he would have asserted to have a lawyer present during questioning.  For these reasons, any statements made by Mr. Hernandez Miranda to law enforcement officers on the day of his arrest must be suppressed.

MTS Reply at 2.  "*Miranda* set forth rules of police procedure applicable to 'custodial interrogation.'  By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Oregon v. Mathiason*, 429 U.S. 492, 494 (1977) (internal quotation marks and citations omitted).  The evidence shows that the agents drew and pointed their weapons at the car Defendant occupied, identified themselves as police, and immediately handcuffed him.  The Government contends in a footnote that Defendant was not in custody at the time he was questioned by officers.  *See* Sur-Reply to MTS ("MTS Sur-Reply"), Docket No. 61, at 5 n.4 (arguing that Defendant was not in custody because he was handcuffed in a parking lot, was only handcuffed briefly, and was not directly confronted with evidence of his guilt at that time).[10]  The Court rejects the argument outright as regardless of whether the agents describe what occurred as a detention or an arrest, or could have done more to restrict Defendant's liberty, no reasonable person would have felt free to leave under those circumstances.  *See United States v. Kim*, 292 F.3d 969, 973 (9th Cir. 2002) (a person is in custody whenever movement has been restrained to the degree associated with a formal arrest).

Alternatively, the Government contends that the Defendant was not interrogated.  *See* MTS Sur-Reply at 2.  The Government contends that general on-the-scene questioning does not require a *Miranda* advisal and directs the Court to the Ninth Circuit's decision in *United States v. Davis*, 530 F.3d 1069 (2008), as it "highlights this principle." *Id.* at 3.  In *Davis*, law enforcement agents were in the midst of executing a search warrant at a rural location suspected of being a marijuana farm when the appellant drove onto the property.  530 F.3d at 1075.  The appellant exited his vehicle and asked what was going on.  *Id.*  A deputy told appellant that he would need to speak with a detective and be read the warrant and, while waiting for a detective, spoke with appellant for no more than ten minutes.  *Id.*  At some point in those ten minutes appellant asked if he was free to leave and was informed by the deputy that he was not free to leave.  *Id.*  A sergeant then approached appellant and read him the warrant.  *Id.*  Appellant was then searched and hashish oil

---

[10] The Court would note that in suggesting that the Defendant was not in custody here for the purposes of *Miranda*, the Government would eviscerate the argument that Defendant's cellphone was contemporaneously seized incident to his arrest.

was found on his person.  *Id.*  The sergeant then directed appellant to speak with another law enforcement agent who was unaware that appellant had been searched and hashish oil discovered. *Id.*  According to appellant, the conversation was "casual" and "low-key."  *Id.*  He was not in handcuffs.  *Id.*  The agent asked appellant what he knew about the alleged grow operation.  *Id.* at 1076.  Appellant responded "everything."  *Id.*  The agent then asked a follow-up question about appellant's role in the grow operation and appellant responded that he "helped."  *Id.*  In response to the next question appellant stated that he should probably speak with an attorney and questioning stopped at that point.  *Id.*

The appellate court reviewing the trial court's denial of appellant's motion to suppress first noted that "[W]hether an individual detained during the execution of a search warrant has been unreasonably seized for Fourth Amendment purposes and whether that individual is 'in custody' for Miranda purposes are two different issues."  *Id.* at 1081.  "Where an individual has been detained incident to a search warrant, and officers' questioning stays within the bounds of questioning permitted during a *Terry*[11] stop, *Miranda* rights are not required."  *Id.*  However, even in the context of a temporary detention in conjunction with the execution of a search warrant, if "the individual is asked questions going beyond a brief *Terry*-type inquiry, the individual is entitled to *Miranda* warnings."  *Id.*  The Court considered the facts before it and concluded:

> The total number of questions asked of [appellant] by law enforcement officers was minimal.  The deputies' initial questions were directed at determining [appellant's] identity and reason for being on the property.  The four or so questions asked by Agent Wright were all aimed at obtaining information to confirm or dispel Agent Wright's suspicion that [appellant] might be part of the marijuana growing operation given that he was related to the property owners and arrived at the property via a locked, electric gate.  Accordingly, law enforcement officers were not required to advise [appellant] of his *Miranda* rights.

*Id.* at 1082.  The Court would not find that *Davis* supports the Government's contention that *Miranda* warnings were not required here.  First, the case is factually and legally distinguishable in that Defendant was not temporarily detained in conjunction with the execution of a search warrant.  *See id.* at 1081.  But more to the point the agents here did not need to confirm or dispel a suspicion that Defendant "might be part of" the trafficking organization.  *See id.* at 1082.  To the

---

[11] *Terry v. Ohio*, 392 U.S. 1 (1968).

contrary the agents had just witnessed Defendant accept receipt of a suitcase containing six kilograms of cocaine and 14 kilograms of sham cocaine at a pre-determined delivery site. The questions posed specifically sought information to further the investigation.[12]

## IV. Conclusion

Based on the foregoing discussion, the Court would deny the Motion to Dismiss Indictment in its entirety. The Court would deny the Motion to Suppress in as much as it seeks to suppress evidence gathered from Defendant's cellphone but would grant it in as much as it seeks to suppress Defendant's statements to officers after he was detained.

---

[12] The other case the Government relies on is even less helpful. In *United States v. Dunnings*, the Second Circuit considered in a footnote Dunning's response to a question posed by officers during the execution of a search warrant:

> Although counsel has not raised the point on appeal, we have considered whether use of this answer violated Dunnings' privilege against self-incrimination as construed by recent rulings of the Supreme Court. We do not think so. Chief Justice Warren's opinion in *Miranda* [citation omitted] expressly excepted "General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process * * *." We do not regard this as inapplicable here simply because only two citizens, Dunnings and Brockington, were "on-the-scene." *See Allen v. United States*, 129 U.S. App. D.C. 61, 390 F.2d 476, 478-479 (1968) (Leventhal, J.). *Orozco v. Texas*, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969), concerned questioning not at the scene and time of the crime but in the defendant's bedroom four hours later.

425 F.2d 836, 838 n.1 (1969). *Dunnings*, decided before *Mathiason*, would seem to stand only for the proposition that *Miranda* warnings are only required when a person is in custody, as Defendant here clearly was.

17